UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VIDAL MCDOWELL**, for himself and
on behalf of all others similarly situated,

    Plaintiff,

vs.

**PLUTO ACQUISITION OPCO, LLC
d/b/a PEOPLEFACTS, LLC,**

    Defendant.

Case No:  2:23-cv-12827

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, VIDAL MCDOWELL, seeks to hold PLUTO ACQUISITION OPCO, LLC d/b/a PEOPLEFACTS ("PeopleFacts") for falsely reporting to his prospective employer that Plaintiff was "found guilty" of murder and felony weapons charges — crimes for which he had been exonerated nearly 20 years ago. Consequently, Plaintiff lost his job for crimes he never committed.  The harm suffered by Plaintiff was avoidable — a product of Defendant's willful failure to follow the FCRS's simple requirements for issuing consumer reports used for employment purposes.  Plaintiff seeks justice for himself, and the classes of consumers impacted by PeopleFacts' unlawful conduct.

1

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x, and the common law tort of defamation.

2. The FCRA requires that companies like PeopleFacts—which sell employment and/or background check reports that have a serious and decisive impact on the ability of consumers to obtain employment and/or housing opportunities—follow reasonable procedures to assure the maximum possible accuracy of the information they report. Congress described these obligations placed on consumer reporting agencies as "grave responsibilities." 15 U.S.C. § 1681.

3. PeopleFacts failed to treat these obligations accordingly, and despite knowing that its process for obtaining consumer report information was inadequate, it continued to sell reports that inflicted harm upon consumers, including Plaintiff.

4. This case arises because PeopleFacts routinely violates the accuracy requirement of the FCRA by reporting inaccurate information about consumers, including Plaintiff.

5. Such misreporting, which results from the failure to use reasonable procedures designed to ensure the information the Defendant

reports is as accurate as possible, results in a violation of the FCRA's accuracy requirement.

6.     Consumer reporting agencies ("CRAs") such as PeopleFacts that create consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. Defendants' practices harm consumers seeking employment by prejudicing employers with inaccurate adverse information.

7.     Plaintiff brings claims under § 1681e(b) against PeopleFacts because it falsely reported him as being "found guilty" of second-degree murder and felony weapons charges.

8.     The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how PeopleFacts has complied with its now 50-year-old obligation to conduct a meaningful and accurate investigation.

9.     The FCRA also requires that a consumer reporting agency reporting negative public record information likely to have an adverse effect on a consumer's ability to obtain employment must provide the consumer

with contemporaneous notice of the information it is reporting and to whom it is reporting it.

10.     Discovery will prove PeopleFacts violated 15 U.S.C. § 1681k(a)(1) and (2) by failing to maintain strict procedures to ensure the accuracy of the information it reported and failing to promptly notify consumers when it was reporting negative public record information likely to have an adverse effect on their ability to obtain employment or housing.

11.     To further protect consumers, the FCRA makes it presumptively illegal for a consumer reporting agency to furnish a report in the employment context.  A consumer reporting agency or reseller may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization to obtain the report, and, if applicable, will provide the consumer with a pre-adverse action notice.

12.     Discovery will prove PeopleFacts violated 15 U.S.C. § 1681b(b)(1)(A)(i)-(ii) by failing to obtain the requisite certifications from the person to whom it issued Plaintiff's consumer report.

13.    The FCRA's interlocking certification and notice requirements are intended to protect consumer privacy by restricting the use of consumer reports to permissible purposes and implement safeguards to ensure the information being reported is accurate and consumers are made aware of what is being reported about them.

## JURISDICTION AND VENUE

14.    The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

15.    Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the PeopleFacts transact business within this District and Division.

## PARTIES

16.    Plaintiff is a natural person and a resident of the State of Michigan.  He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

17.    PeopleFacts is a consumer reporting agency ("CRA") as defined in 15 U.S.C. § 1681a(f) or a reseller as defined in 15 U.S.C. § 1681a(u), and it disburses consumer reports to third parties for monetary compensation. It regularly conducts business in Michigan and issued Plaintiff's consumer report to a Michigan employer for employment in Michigan.

## **FACTUAL ALLEGATIONS**

### *Section 1681e(b) of The Fair Credit Reporting Act Requires Substantive Investigations*

18.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA, Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

19.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) **Accuracy of report**. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual

about whom the report relates.

20.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as
> "[a] detailed inquiry or systematic examination." Am.
> Heritage Dictionary 920 (4th ed.2000); see Webster's Third
> New Int'l Dictionary 1189 (1981) (defining "investigation"
> as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

21.    Further, as the CRA Defendant is aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b)
> and § 1681i(a)]. For example, Section 1681e(b) requires (1)
> "reasonable procedures" that (2) "assure" (3) "maximum
> possible accuracy." To "assure" means "to make sure or certain:
> put beyond all doubt." *Webster's Third New International
> Dictionary* 133 (1993). "Maximum" means the "greatest in
> quantity or highest degree attainable" and "possible" means
> something "falling within the bounds of what may be done,
> occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to
> imagine how "maximum possible accuracy" could be
> guaranteed without an adequate investigation. Likewise, Section
> 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying
> that an "investigation" was required to have been performed in
> the first instance. *Burke*, 2011 WL 1085874, at *4.

22.     It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### Defendant Failed to Accurately Report Consumer Information

23.     In January 2022, Plaintiff was offered employment by L&W LLC, d/b/a Autokiniton ("Autokiniton"), a manufacturer in the automobile industry located in Belleville, Michigan.

24.     As a condition of employment, Plaintiff was required to undergo a background check.

25.     Autokiniton procured Plaintiff's consumer report from PeopleFacts.

---

[1]     *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

26.     Pending the return of the background check from PeopleFacts, Autokiniton allowed Plaintiff to commence work. Shortly thereafter, it terminated his employment, informing him that his background check wasn't clear. Plaintiff was escorted out of the building and subjected to humiliation and embarrassment.

27.     Autokiniton did not provide Plaintiff with notice or the opportunity to review his consumer report before it terminated his employment.

28.     Autokiniton would have provided Plaintiff with notice and a copy of his consumer report if PeopleFacts had conditioned use of its consumer reports on compliance with 15 U.S.C. § 1681b(b)(3)(A), when applicable.

29.     Plaintiff later learned the PeopleFacts background check was inaccurate and contained the entries below:

| Defendant :**Vidal Natifi McDowell** | Case Number | **0200432101** |
|---|---|---|
| DOB    **01/22/1984** | Jurisdiction | **WAYNE COUNTY** |
| Identified by : name, date of birth | Source State | **MI** |

**Charge #1**

| | |
|---|---|
| Charge | **WEAPONS FELONY FIREARM** |
| Crime Type | **FELONY** |
| Disposition | **Found Guilty** |
| Offense Date | **02/25/2002** |
| Disposition Date | **05/07/2003** |

**Sentence Comments :** CONFINEMENT 02YR 00MTH 000DAY TO 00YR 00MTH 000DAY PROB: 00R 00MTH 000DAY

| Charge #2 | |
| --- | --- |
| Charge | **HOMICIDE-MURDER-SECOND DEGREE** |
| Crime Type | **Felony** |
| Disposition | **Found Guilty** |
| Offense Date | **02/25/2002** |
| Disposition Date | **05/07/2003** |
| **Sentence Comments :** LIFE 00YR 00MTH 000DAY TO 00YR 00MTH 000DAY PROB: 00YR 00MTH 000DAY | |

30.    The criminal history information PeopleFacts reported about Plaintiff was inaccurate and never should have been reported.  Plaintiff is not a convicted felon. In fact, the Michigan Court of Appeals reversed Plaintiff's felony convictions, and all charges were dropped by the prosecution.

31.    The Court's docket clearly and unmistakably indicates all charges against Plaintiff were dismissed, *Nolle Prosequi.* The entry below appears on the court's docket:

(INTENTIONALLY LEFT BLANK)

| | |
|---|---|
| 06/16/2003 | Claim Of Appeal (Circuit) |
| 06/16/2003 | Filed |
| 09/18/2003 | Transcript Of Trial |
| 09/18/2003 | Filed |
| 10/13/2003 | Transcript Of Sentence |
| 10/13/2003 | Filed |
| 10/21/2003 | Transcript Of Trial |
| 10/21/2003 | Filed |
| 05/10/2004 | Appellate Court Decision To Remand to Lower Court |
| 05/10/2004 | Filed |
| 06/18/2004 | Motion To Dismiss The Case |
| 06/18/2004 | Signed And Filed |
| 06/18/2004 | Nolle Prosequi |
| 06/18/2004 | Motion To Dismiss Without Prejudice Filed/Signed |
| 06/18/2004 | Pre-Trial  (9:00 AM) (Judicial Officer Boykin, Ulysses W.) |
| | Parties Present |
| | Result: Case Was Dismissed |

32.     PeopleFacts' publication of reports and public record information that ultimately transmitted to Autokiniton would not have occurred but for the failure of PeopleFacts to follow reasonable procedures to ensure the maximum possible accuracy of the information in Plaintiff's consumer report as required by 15 U.S.C. § 1681e(b).  Specifically, a simple review of the court docket would have revealed that Plaintiff's conviction had been reversed, the charges dropped and the action dismissed.

33.     Defendant's failure to review the state court docket before releasing Plaintiff's consumer report evidences Defendant's failure to follow reasonable procedures to ensure maximum accuracy.

34.     Discovery will prove Defendant does not take any measures to confirm initial findings with the relevant court's docket.

35.     Plaintiff did not receive timely notification from PeopleFacts that it had provided negative information ("found guilty" of homicide — murder second degree and weapons felony firearm) to Autokiniton.  PeopleFacts knew or should have known such information was likely to adversely affect his opportunity for employment.  In fact, Plaintiff received no notice from PeopleFacts.

36.     Plaintiff's ordeal is detailed on the National Registry of Exonerations.

(https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=3427 – last visited October 3, 2023).

In an article published by the Metro Detroit News, his attorney at the time, Jeff Taylor remarked, "Now he has the opportunity to resurrect his life.  This is about getting his reputation back, and his life back, and beginning a new chapter in his life.  It's a great relief for him."

(https://www.metrotimes.com/news/vidale-vindicated-2184598 -  last visited October 3, 2023)

37.     Since being released from prison, Plaintiff has resurrected his life and has never been arrested, charged, or convicted for any crimes.

38.     However, the reputation Plaintiff believed he had regained was damaged, and his employment terminated, when PeopleFacts falsely depicted him as a murderer.

39.     Discovery will prove PeopleFacts never obtained certification from Autokiniton that it would, if applicable, provide him with notice and a copy of his report before taking an adverse employment action against him.

40.     If PeopleFacts had required Autokiniton to make the requisite certifications before obtaining Plaintiff's consumer report, Plaintiff would have received pre-adverse action notice, including a copy of his consumer report, before being subjected to an adverse employment action.

41.     Discovery will prove PeopleFacts never provided Plaintiff with contemporaneous notice that it was reporting negative public record information about him to Autokiniton.

42.     Discovery will prove PeopleFacts did not maintain strict procedures to ensure the public record information it reports that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up-to-date.

43.     The inaccurate and outdated report caused Plaintiff substantial hardship, and Plaintiff suffered financial loss, humiliation, loss of sleep, anxiety, and embarrassment caused by Defendant' violations of the law.

44.     CRAs such as Defendant deal in volume and use standardized procedures to gather information and attribute it to individuals. They therefore use processes designed to be cost-effective rather than accurate, because ensuring accuracy often costs Defendant additional money.

45.     Defendant failed to follow reasonable procedures to assure the maximum possible accuracy regarding the information it sold about the Plaintiff.

46.     Defendant's reporting of the inaccurate information concerning Plaintiff was neither accidental nor a result of simple negligence but instead a result of deliberate disregard and flawed policies and procedures.

### *Plaintiff Suffered Actual Harm from the Inaccurate Reporting*

47.     As a result of Defendant's reporting of the inaccurate information about Plaintiff, he has suffered damages, including, but not limited to:

   a.  Humiliation;

   b.  Stress associated with the loss of employment;

c. Loss of time attempting to cure the error;

d. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life from being labeled a sex offender and being denied employment; and

e. Stress associated with attempting to resolve this matter in the last year.

### *Plaintiff's Privacy Rights Were Violated as He Was Deprived of the Inaccurate Information Being Reported About Him by Defendant*

48.    The FCRA also makes it presumptively illegal for a CRA like PeopleFacts to furnish a report in the employment context. A consumer reporting agency may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization, and, if applicable, will provide the consumer with a pre-adverse action notice.

> (b) **Conditions for Furnishing and Using Consumer Reports for Employment Purposes**
> (1) *Certification from user.* A consumer reporting agency may furnish a consumer report for employment purposes only if:
> (A) the person who obtains such report from the agency certifies to the agency that
> (i)    the person has complied with

paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable…

15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

49.    These requirements must be met as to *each report* of CRA issues; blanket or prospective certifications of compliance by the users of reports are not permitted. That means that for *every report* a PeopleFacts employer-client procured from PeopleFacts, the recipient must make the requisite certifications to PeopleFacts. *Id*.

50.    PeopleFacts furnished consumer reports to its employer-clients without first obtaining certification confirming that the consumer had been provided a lawful disclosure, had authorized in writing the procurement of the consumer report, and certification that the employer would provide pre-adverse action notice when applicable. Because PeopleFacts failed to obtain this certification, Plaintiff was not provided a compliant disclosure and never received a pre-adverse action notice or a copy of his consumer report prior to being fired.

51.    Any consumer report published without the requisite

certifications in place is not published for a permissible purpose.

52.    In the employment context, the FCRA imposes upon CRAs additional requirements designed to protect consumers' rights.  In keeping with the FCRA's fundamental goal of transparency, the FCRA requires that CRAs that provide reports that contain public-record information likely to have an adverse effect on a consumer's ability to obtain employment, must either:

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2) maintain strict procedures designed to ensure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1),(2).

53.    PeopleFacts violated 15 U.S.C. § 1681k(a)(1) when it failed to provide Plaintiff with contemporaneous notice when it furnished Plaintiff's

consumer report information to Autokiniton. The information PeopleFacts furnished—"found guilty" of murder—fits the bill of "negative information" likely to have an adverse effect on employment.  However, PeopleFacts never notified Plaintiff that it was reporting negative information about him or reporting such information to anyone at all.

54.    PeopleFacts also violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public-record information it reports is complete and up to date. If it had in fact maintained strict procedures, it would not have misreported information clearly visible on the court docket indicating the felony charges had been dismissed as *Nolle Prosequi*.

### *Defendant' Violations Were Willful*

55.    The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  at 69.

56.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

57.     As detailed above, the FCRA section at issue here and its informative guidance have been around for over 50 years. The language of § 1681e(b) has not changed. The FCRA's caution about Defendant's "grave responsibilities" to ensure accuracy has not changed.

## COUNT ONE – VIOLATION OF FAIR CREDIT REPORT ACT
### 15 U.S.C. § 1681e(b)
### (Plaintiff, Individually)

58.     Plaintiff realleges and incorporates paragraphs 1 through 57 above as if fully set out herein.

59.     Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in Plaintiff's consumer report.

60.     As a result of Defendant's failures, Plaintiff suffered actual damages, including but not limited to the loss of his ability to obtain housing, loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

61.   The Plaintiff is entitled to recover actual damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

62.   Because Defendant's conduct was also willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts above. 15 U.S.C. § 1681n

## COUNT TWO – DEFAMATION
### (Plaintiff, Individually)

63.   Plaintiff realleges and incorporates paragraphs 1 through 61 above as if fully set out herein. Plaintiff asserts this claim as alternative to his FCRA claims, to the extent that the Defendant may argue that the FCRA does not apply to them.

64.   Within the context of the foregoing allegations, Defendant made multiple false and defamatory statements regarding the Plaintiff.

65.   In each statement, Defendant identified Plaintiff by name. Each statement was also false, as Plaintiff's "guilty" finding had been reversed and all charges against him dropped.

66.     Labeling Plaintiff a felon and murderer was defamatory because such a label tends to lower one's reputation within the community or expose one to ridicule.

67.     Defendant intended to publish the statements, and the statements were false.

68.     Defendant published the statements knowing they were false or acting in reckless disregard for the truth or falsity of the statements.

69.     As a result of Defendant's conduct, actions, and inactions, Plaintiff suffered various types of damages as set forth herein, including specifically the loss of the ability to obtain housing, mental and emotional pain, anguish, humiliation, and embarrassment of being inaccurately labeled a sex offender, and damage to his reputation.

70.     This defamation was malicious, willful, deliberate, intentional, and/or with reckless disregard for the interests and rights of the Plaintiff, so as to justify an award of punitive damages against the Defendant in an amount to be determined by the Court.

## **CLASS ACTION ALLEGATIONS**

68.     Plaintiff asserts a claim against PeopleFacts on behalf of a "Certification Class," defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by PeopleFacts and obtained through PeopleFacts that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

69.     Plaintiff also asserts a claim against PeopleFacts on behalf of a "1681k Notice Class," defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by PeopleFacts and obtained through PeopleFacts that included criminal history entries of the grade of misdemeanor or higher, within five years of the filing of this lawsuit through the date of final judgment in this action.**

70.     **Numerosity.**   The members of the putative classes are so numerous that the joinder of all class members is impracticable. PeopleFacts furnished thousands consumer reports to Onin Staffing alone, for positions across the United States.   PeopleFacts regularly compiles consumers' personal, private, and sensitive information into consumer reports for sale to employers.  Plaintiff is informed and believes that during the relevant time period, tens of thousands of employees and prospective employees, if not hundreds of thousands, satisfy the definition of the putative classes.  Based on the number of putative class members and their

geographic disbursal, joinder is impracticable.  The names and addresses of the class members are identifiable through PeopleFacts' records and putative class members may be notified of this action by mailed notice.

71.  **Predominance of Common Questions of Law or Fact.**  Class treatment is also appropriate because questions of law or fact common to the putative Classes predominate over any questions affecting only individual members of the putative Classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  PeopleFacts' conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Such common questions include, among others:

a.  whether Defendant furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2), before furnishing such reports;

b.  whether Defendant furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(3), if applicable;

c.  whether Defendant failed to take reasonable measures to

ensure maximum possible accuracy of its investigations;

d.  whether Defendant failed to provide consumers contemporary notice when issuing consumer reports that contained public-record information likely to have an adverse effect on consumers' ability to obtain employment;

e.  whether Defendant's violations of the FCRA were willful;

f.  the proper measure of statutory damages; and

g.  the proper form of relief.

72.  Members of the putative Class do not have an interest in pursuing separate actions against PeopleFacts, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant.  Moreover, management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

73.  This case is further maintainable as a class action because

prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for PeopleFacts. Further, adjudication of each individual class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

74. This case is also maintainable as a class action because PeopleFacts acted or refused to act on grounds that apply generally to the putative Class.

75. Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. PeopleFacts' conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative class do not have an interest in pursuing separate actions against PeopleFacts, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the

need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant.  Moreover, management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

76.  **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the putative Classes and has retained Counsel experienced in complex class action litigation, including nationwide class actions pressing claims under the FCRA.

## CLASS ACTION CLAIMS FOR RELIEF

## COUNT III – FCRA VIOLATIONS

**Failure to Obtain Certification Prior to Furnishing a
Consumer Report for Employment Purposes in Violation of
15 U.S.C. § 1681b(b)(1)(A)
(Individually and on behalf of the "Certification Class")**

65.  Plaintiff restates the allegations set forth in Paragraphs 1 through76 as if fully set forth herein.

66.  PeopleFacts willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided consumer reports about Plaintiff, which were used for

employment purposes, without the user's or recipient's certification of compliance with the disclosure, authorization, and notification requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

67.    PeopleFacts invaded Plaintiff's privacy by compiling Plaintiff's personal, private, and sensitive information into a consumer report for employment purposes and furnishing said consumer reports without a permissible purpose because it did not have the user's certification.

68.    PeopleFacts intruded upon Plaintiff's seclusion by compiling Plaintiff's personal, private, and sensitive information into a consumer report for employment purposes and furnishing said consumer reports without a permissible purpose because it did not have the user's certification.

69.    PeopleFacts caused Plaintiff injury because the reports PeopleFacts furnished were used, in whole or in part, as the basis for an adverse employment action.

70.    PeopleFacts caused Plaintiff injury because PeopleFacts permitted the user of their consumer reports to circumvent the disclosure, authorization, and notification requirements of the FCRA when using

consumer reports for employment purposes by failing to require Kiosite to certify compliance therewith.

71.     PeopleFacts caused Plaintiff injury because it provided his consumer report to a user or recipient who he had not authorized to receive it.

72.     The forgoing violations were willful.  At the time PeopleFacts violated 15 U.S.C. § 1681b(b)(1)(A), PeopleFacts knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable, before furnishing consumer reports used for employment purposes.  PeopleFacts' willful conduct is also reflected by, among other things, the following facts:

  a.  PeopleFacts knew of potential FCRA liability;

  b.  PeopleFacts is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

c.  The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

d.  PeopleFacts knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

e.  PeopleFacts voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

65.  Plaintiff and the "Certification Class" are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

66.  Plaintiff and the "Certification Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative "Certification Class" prays for relief as follows:

a.  determining that this action may proceed as a class action;

b. designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c. issuing proper notice to the putative class at PeopleFacts' expense;

d. finding that PeopleFacts committed multiple, separate violations of the FCRA;

e. finding that PeopleFacts acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f. awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g. awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT IV – FCRA VIOLATION

**Failure to Provide Contemporaneous Notice
in Violation of 15 U.S.C. § 1681k
(Plaintiff, individually and on behalf of the "§ 1681k Class")**

77.    PeopleFacts willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about Plaintiff and Class Members, which were

used for employment purposes and contained public-record information likely to have an adverse effect on consumers' ability to obtain employment, without providing the subjects of the report contemporaneous notice that it was furnishing the report to the users.

78. PeopleFacts cannot rely on the "strict procedures" requirement of Section 1681k(a)(2) because it takes no steps to ensure the public-record information it reports is complete and up to date.

79. Plaintiff and Class Members suffered informational injury by PeopleFacts' failure to provide them with statutorily required information when such information was due.

80. PeopleFacts further caused Plaintiff and Class Members injury because it deprived Plaintiff and Class Members of the knowledge that it was reporting information about them that may affect their job prospects, eliminating those individuals' ability to correct inaccuracies or preemptively discuss any negative information with potential employers.

81. The forgoing violations were willful. At the time PeopleFacts violated 15 U.S.C. § 1681k(a)(1), PeopleFacts knew it was required to provide contemporaneous notice of its furnishing of reports because it has no process in place to meet the strict procedures requirement of Section 1681k(a)(2)

when it furnishes reports for employment purposes that contain negative public-record information.  PeopleFacts' willful conduct is also reflected by, among other things, the following facts:

    a.    PeopleFacts knew of potential FCRA liability;

    b.    PeopleFacts is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

    c.    The FCRA's at-the-time notice requirement is clearly spelled out in the plain language of the statute;

    d.    PeopleFacts knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

    e.    PeopleFacts voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

82.    Plaintiff and the 1681k Notice Class are entitled to statutory damages of between $100.00 and $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

83.    Plaintiff and the 1681k Notice Class is further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the putative Certification Class pray for relief as follows, in the form of an order:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's Counsel as counsel for the putative classes;

c.    requiring notice to the putative class at PeopleFacts' expense;

d.    finding that PeopleFacts committed multiple, separate violations of the FCRA;

e.    finding that PeopleFacts acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f. awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g. awarding reasonable attorneys' fees and costs as provided by the FCRA.

Respectfully submitted,

Dated:  November 7, 2023

/s/ Michael N. Hanna
Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 739-1950
mhanna@forthepeople.com

MARC R. EDELMAN, ESQ.
Fla. Bar No. 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
813-577-4722
MEdelman@forthepeople.com

Attorneys for Plaintiff